B. F. WILDER *et al.*, plaintiffs in error, *vs.* JAMES H. BLOUNT, adm'r, defendant in error.

A testator provided that one-seventh of his property should, at his death, be set off to his married daughter, and the remainder be kept together by his wife, who was the executrix, for the support and education of his five minor children, mentioned by name, until they should respectively come of age, or the girls should marry, in which event the children marrying or coming of age should take out one-sixth, one fifth, one-fourth, and so on to the last, and "should either of said minors die before coming of age, etc., his or her share to cease to exist, and become the joint and common property of those living." By said words, "those living," he meant those living of the five minors.

*Held further*, If one of the "five" should die before twenty-one years old, or if a girl, before marriage, the share of the one so dying belongs to all of the "five minors" then living, and not solely to those of the five who remain minors at the death of the one dying.

Wills.   Distribution of estates.   Before Judge FOSTER. Jones Superior Court.   May Term, 1868.

William Paul, of said county, made a will, by which, after providing for his burial and payment of his debts, he directed that all his estate "be kept together, and worked and managed," by his executors, "for the support and maintenance and liberal education" of his "minor children, Mary Ann, Martha, William, Jabez and Susan," and as "each of said children respectively arrives at the age of twenty-one years, or at

the marriage of said daughters," said executors should select persons to appraise "the whole estate at that time," except household furniture, and get its cash value, and they, being sworn, shall divide the same into seven shares, and the adult or married heir shall then be paid one-seventh of said estate, and receipt in full for it, as his or her share of the same, and this "rule and plan of settlement and distribution shall be applied to each and every of the before mentioned five minor children, and my wife, and my daughter, Lucy Wilder." It then stated that, as said Lucy *had* married, such appraisement should be at once made after his death, and she should at once take her seventh, less certain advancements therein mentioned. Said clause then proceeded as follows: "This rule of division applied will make this: at the second appraisement the division will be between six, or such of them as are in life, and so on down to the youngest or last living, and in case of the death of any one of the five minor children before they arrive at age, their portion shall cease to exist, and become and be the joint property of those living." Item third provided, that in the event of his wife's marriage, her interest or portion of said estate should not be drawn out until the youngest child, (then three years old,) should marry, or become twenty-one years old. The balance of the will appointed his wife and another his executors, gave them power to sell and re-invest "for the interest of said estate and minor heirs, and to be subject, with all the increase, to be divided as hereinbefore directed," and to see that the minors are well educated.

Testator died, and this will was proven in 1860. In process of time Blount became administrator *de bonis non cum testamento annexo* of said testator, and filed a bill for direction. He averred the foregoing, that Mary and Martha had married, Mrs. Wilder's seventh of the estate had been paid to her, and afterwards Jabez died in 1864, a minor, while Susan was yet a minor and unmarried, and while William was yet a minor; and the widow died in 1865 intestate, and Blount became her administrator. As administrator of William Paul, Blount wishes to know whether Mrs. Wilder,

Mary and Martha, or their respective husbands, or the representatives of the widow, are entitled to any of Jabez's share.

The Chancellor decided that Susan and William took all of Jabez's share, and a decree was passed accordingly. This is assigned as error by the children who had married, or were of age, when Jabez died.

J. WINGFIELD, by THOMAS ALEXANDER, for plaintiffs in error.

HARRIS & HUNTER, for defendant.

McCAY, J.

This is purely a question of construction, and the only rule of law controlling it, is that which requires the intent of the testator to be the thing sought for. Evidently the testator, as was natural, intended to make a distinction between his married daughter and the five minors, who, by his death, were about to be left without a protector. One-seventh of his estate was to go to Mrs. Wilder, the married daughter, immediately, who was to give a receipt in full for her share of his estate. The remainder was to be kept together for the benefit of the "five minors" and the mother. As any one. of the "five" married or came of age, a share was to be drawn out, until the last one married or came of age, when what was left was to be divided between the youngest child and the widow. He made of his wife and "five minor" children a new family, under her care as his executrix. Investments were to be made for their benefit; she was to see to their education, and if any one were to die, the share of that one was to become the joint property of "those living." We think, by these words, the testator had in his mind the whole of the five minors; he does not say those living who are still minors, but simply those living. He had said, it will be noticed, that he wished "all his estate" to be kept together, and worked and managed for the benefit, support and maintenance, and liberal education of his minor children, Mary, Martha, William, Susan and Jabez. He conceived of them as a family, orphans, and in his mind they were as

a body distinct from Mrs. Wilder, who had a protector in her husband.

In our judgment this was a joint property in the five, subject, if one of them died unmarried and an infant, to be divided among those living. There are, it is true, expressions in this will which cast some doubt upon this view of it. There is some ground for holding that Mrs. Wilder is included in "those living," and some for the view of the Court below, that he meant "those living" who are still minors; and again, it is not perfectly clear that he did not intend his widow to take one-seventh at the first, subject to be returned if she married.

We have looked at this will in all these aspects, but upon the whole, we have, with some doubt it is true, come to the conclusion that, as he evidently had the "five minors" in his mind, as a class, he intended, if any one of the five should die unmarried and a minor, the share of that one should go to all the others of the five living at the time, and so we rule. Jabez, one of the minors, having died a minor, and the mother being also dead, Jabez's share is to go to such of the five as are living.

Judgment reversed.